## In re Anonymous No. 51 D.B. 78

Disciplinary Board Docket no. 51 D.B. 78.

JOHNSON, *Board Member,* March 27, 1980—Pursuant to Pa.R.D.E. 208(d) the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

On October 19, 1978, the office of disciplinary counsel filed a petition for discipline to the above number alleging that respondent [ ], on or about February 25, 1974, entered into a contract of employment with the parents of two brothers injured in an automobile accident to represent the interests of the two boys and their parents in recovering damages. At that time, respondent received a retainer of $200 and a fee agreement was entered into whereby respondent was to receive 40 percent of any recovery by verdict or settlement secured on

behalf of his clients. It was further charged that respondent secured payments totaling $25,000 under the medical payment and uninsured motorist coverage provisions of his clients' policy from which he demanded and received a fee of $9,200, advising his clients that the fee would be taken into consideration when the negligence action against the potentially liable tortfeasors was completed. That, thereafter, respondent did nothing further with regard to the claims permitting the statute of limitations to run, refused to respond to his clients when they endeavored to contact him, and likewise refused to respond to various communications from another attorney retained by his clients. No answer was filed by respondent and the matter was referred to hearing committee [    ]. Hearings on the merits were held on February 6, 1979 and July 24, 1979, at which respondent was present and was represented by counsel. The hearing committee filed its report on October 19, 1979, recommending public censure with one year probation. Both disciplinary counsel and counsel for respondent declined to file a brief on exceptions and the matter was referred to this board for review and recommendation to your honorable court. The matter was considered by this board on November 9, 1979, at which a concurrence as to the recommendation of the board could not be reached by the members present. The matter was subsequently considered on November 19, 1979, by a conference call meeting of the board at which time the adjudication was determined. However, on December 13, 1979, the office of disciplinary counsel filed a petition to reopen the record. The petition to reopen the record was refused by the board on January 18, 1980.

## II. FINDINGS OF FACT

The board adopts the findings of fact by the hearing committee which are supported by the evidence and are as follows:

1. On February 24, 1974, [A] and [B] were injured in an automobile accident involving at least three vehicles in [   ] [   ], Pa.

2. At the time of the accident, [A and B] were passengers in an automobile driven by [C]. The car had been in the possession of [D], [C's] employer.

3. On February 25, 1974, [A and B] and their parents employed respondent to initiate legal action against [D], [C] and other potentially liable parties, and to otherwise represent the interests of [A and B] and their parents in recovering damages and benefits resulting from the February 24, 1974 accident.

4. Respondent and [A and B] entered into a contingent fee agreement in which respondent would receive 40 percent of any recovery by verdict or settlement on behalf of [A and B]. In addition [A and B] paid respondent $200 as a retainer.

5. At the time of the injuries to [A and B], they were insured by State Farm Insurance Company. The coverage included medical benefits and damages caused by uninsured motorists.

6. Respondent submitted medical expenses to State Farm and obtained the following payments from State Farm:

| | |
|---|---:|
| For [B] | |
| Uninsured Motorist Coverage | $20,000 |
| Medical Pay Benefits | 2,000 |
| For [A] | |
| Uninsured Motorist Coverage | 2,415 |
| Medical Pay Benefits | 585 |
| Total | $25,000 |

7. Respondent demanded and received from [A and B] a fee of $9,200 based upon the State Farm payments.

8. At the time respondent demanded and received the fee of $9,200, he explained to [A and B] that the fee he was then receiving would be "taken into consideration" or words to that effect when the negligence action against the potentially liable tortfeasors was completed.

9. After the State Farm Insurance payments were received and distributed, [A and B] had no further contact with respondent until these proceedings. They telephoned him frequently and he failed to respond.

10. Counsel for State Farm, intending to assert State Farm's subrogation interests based upon the payments to [A and B], wrote [A and B] on three occasions regarding suit against the potentially liable tortfeasors. [A and B] forwarded the correspondence to respondent, who did not respond to [A and B] or to State Farms' counsel.

11. Counsel representing the interests of the occupants of another vehicle involved in the occurrence in which [A and B] were injured discussed with respondent the theories of legal liability in the case and told respondent that he should do something about [A and B]'s claims since time was running out. He also offered to assist respondent.

12. [A and B] subsequently contacted another attorney regarding the negligence claims and learned from that attorney that the statute of limitations had expired. Respondent had failed to take timely action prior to the expiration of the statute of limitations and had failed to inform [A and B] of the applicable limitations period.

13. The attorney with whom [A and B] sub-

sequently consulted telephoned respondent twice and wrote him twice, but received no response.

14. Respondent allowed his political involvement and government position to interfere with his professional responsibilities.

## III. DISCUSSION

In February 1974, respondent was retained to represent two brothers who were guest passengers in an automobile operated by an employe of the garage where the car had been left by the owner. This car was involved in a three-car accident, the operator being intoxicated and causing two fatalities. The parents of the two boys paid respondent a $200 retainer and signed a 40 percent contingent fee agreement.

By submitting medical bills to his clients' insurance carrier, respondent obtained a $20,000 uninsured motorist payment and a $2,000 medical payment benefits for one brother and $2,415 uninsured motorists payment and $585 medical payments for the other brother, for a total of $25,000. Upon disbursing these payments to his clients, respondent negotiated the retention of a fee of $9,200 indicating the fee would be taken into consideration when the negligence action against the potentially liable tortfeasors was completed.

Thereafter, respondent did nothing further concerning an action against the possible tortfeasors and failed to respond to calls from his clients, calls and correspondence from the insurance company on their subrogation claim, calls and correspondence from an attorney representing the insurance company, and finally, from subsequent counsel engaged by his clients. The statute of limitations ran on the action and a malpractice suit

was filed against respondent. However, he has no malpractice insurance.

At the hearing respondent admitted he had violated D.R. 6-101(A)(3) in neglecting his clients' claim, and D.R. 7-101(A)(2) in intentionally failing to carry out his responsibilities under the contingent fee agreement. His only excuse was that he had allowed his political involvement to interfere with his professional responsibilities. However, it is noted that he became mayor of [ ] in January, 1976, while the retainer by the client, was paid in February, 1974.

It appears respondent has little regard for the disciplinary system. Two prior charges were filed against him concerning the neglect of a legal matter entrusted to him; these were at 76-460 and 76-482. In both cases respondent failed to respond to the D.B.-7, to follow up letters and several telephone calls left at his office by disciplinary counsel. In the instant case, respondent failed to answer the petition for discipline. The prior charges resulted in informal admonitions administered by Chief Disciplinary Counsel on April 19, 1977.

The hearing committee found respondent had violated D.R. 6-101(A)(3) (Neglect of a legal matter entrusted to him) and D.R. 7-101(A)(2) (Intentionally failing to carry out a contract of employment entered into with a client) and recommended public censure and probation for a period of one year. With the findings of the hearing committee concerning the Disciplinary Rules violated, we can agree; however, the board cannot accept the recommendation of the hearing committee. Respondent could not find his file concerning this case and during the course of the first hearing held it developed that at the time of making distribution to his clients respondent had retained $807.40 to pay on a lien of

the Department of Public Welfare. This had been carelessly forgotten by him and it would appear that completely inadequate records of the same had been maintained. Finally, after respondent's counsel had ascertained the amount, it was on April 9, 1979, paid by respondent. Because of the attitude towards his clients, his lack of consideration for fellow members of the bar and his disregard for the maintenance of his clients' records, we would recommend that respondent be suspended for a period of four months. The board recognizes that a suspension of four months would require respondent to file a petition for reinstatement which would afford a hearing committee, the board and your honorable court an opportunity to pass upon his fitness to practice law.

We feel comment should be made upon the refusal of the petition to reopen the record filed by the office of disciplinary counsel in accordance with the provisions of section 89.251 of the Rules of the Disciplinary Board. The petition for discipline filed on October 19, 1978 alleged, inter alia, that respondent had violated D.R. 2-106(A) in that he charged "a clearly excessive fee." The hearing committee made no finding as to the charge of a violation of D.R. 2-106(A) although, in its report, the committee did make reference to the "substantial fee" charged by respondent. The board agrees with the hearing committee since no evidence was offered to the committee upon which it could make a finding that the fee was an excessive fee. It is the duty of the hearing committee to make its findings based upon evidence presented before it. The board should not be expected to take judicial notice that a fee may or may not be excessive. The thrust of the petition to reopen record was to have the matter returned to

the hearing committee for the purpose of receiving into the record testimony and documentary evidence of the excessive nature of the fee. The petition indicates that a special fee determination committee of the [ ] Bar Association has been appointed upon a fee dispute complaint filed by re- spondent's client at no. 3 of 1979, concerning the fee in this matter. Without passing upon whether or not the fee was in fact excessive, it is the position of the board that evidence to that effect should have been presented at the time of the initial hearings, and therefore petition was refused.

## IV. RECOMMENDATION

For the reasons set forth above the Disciplinary Board recommends to your honorable court that respondent be suspended for a period of four months with the right to apply for reinstatement at the end of said period of suspension and that respondent shall comply with all of the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement and sections 91.91-97 of the Disciplinary Board Rules.

Messrs. ' Daniels and Harrington dissent and would vote for public censure.

## DISSENTING OPINION

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

DANIELS, *Board Member*, March 27, 1980—To my knowledge, this is the very first occasion upon which discipline in the nature of suspension from the practice of law has been imposed by this board

in the case of a violation of Disciplinary Rules relating to negligence on the part of an attorney, as opposed to a violation of a Disciplinary Rule involving dishonesty, fraud, deceit or misrepresentation.* Hearing committee [ ] recommended that respondent be publicly censured by the Supreme Court of Pennsylvania and be placed on probation for a period of one year, pursuant to Pa.R.D.E. 204(3). Neither disciplinary counsel, as petitioner, nor respondent filed exceptions to the report or that recommendation of discipline of said hearing committee within the prescribed time. I would, accordingly, respectfully recommend to the Supreme Court that the recommendation of hearing committee [ ] for the imposition of a public censure by the Supreme Court of Pennsylvania and the imposition upon respondent of probation for the period of one year, pursuant to Rule 204(3), be affirmed and adopted and that the recommendation of the imposition of suspension from the practice of law for a period of four months, as submitted by a majority of this board, be rejected.

## ORDER

EAGEN, *C.J.*, And now, April 10, 1980, the recommendations of the Disciplinary Board of the Supreme Court are accepted; and it is ordered and decreed that the said respondent of [ ] County, Pa.

---

*It should be observed that although disciplinary counsel pressed charges for both neglect and dishonesty, etc., hearing committee [ ] found that respondent had violated only the provisions of Disciplinary Rules 6-101(A)(3) and 7-101(A)(2), and not any of the Disciplinary Rules involving dishonesty, fraud, deceit or misrepresentation.

be, and he is herewith suspended from the Bar of the Supreme Court and in all the courts under its supervisory jurisdiction for a period of four months, with the right to apply for reinstatement at the end of said period of suspension and that he comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement and sections 91.91-97 of the Disciplinary Board Rules.